FERGUSON, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s approval of the District Court’s failure to hold an evidentiary hearing regarding whether racial bias infected the jury that sat in judgment of Appellants Israel and Trice. See maj. op. at 1018-20.
Appellants Israel and Trice are both African-American. The original jury impaneled in their case had only one African-American member, Juror No. 8. This same juror, after a day of deliberations, asked to be dismissed. She claimed she could not continue to deliberate, despite the fact that she had been actively participating in deliberations and sending out questions to the Judge up until that point, because her religious beliefs prevented her from sitting in judgment of another person. The District Court accepted Juror No. 8’s explanation and dismissed her. An alternate juror, who is not African-American, was then impaneled. The jury began deliberations anew, eventually finding each Appellant guilty of the charges against her.
After the Appellants were convicted, they moved for a new trial based on an affidavit submitted by their sister, Shondra White. According to the affidavit, a couple months after the trial, while in a local bank, White was approached by Juror No. 8, who recognized White from the trial. After White identified herself, Juror No. 8 told White she had been subject to severe pressure in the jury room, and that pressure, not her religious beliefs, led her to ask to be dismissed. According to White, Juror No. 8 “implied that there might have been some racial implications to pressure her to get off the case.” Despite this troubling information, the District Court denied the Appellants’ request for an evi-dentiary hearing to further question Juror No. 8 regarding what role, if any, racial prejudice played in the jury deliberations.
I dissent on two grounds. First, the majority misconstrues United States v. Henley, 238 F.3d 1111 (9th Cir.2001), which persuasively reasons that racial prejudice is a mental bias that is never acceptable in the jury room. Instead of disregarding Henley, we should apply its reasoning to hold that Federal Rule of Evidence 606(b) does not bar testimony regarding evidence of racial prejudice within the jury. Second, White’s affidavit, *1023 combined with the circumstances of Juror No. 8’s dismissal, sufficiently raises the prospect that the jury may have been tainted by racial bias to require an eviden-tiary hearing on the matter. If called to testify, Juror No. 8 may confirm that nothing untoward occurred during deliberations. Until such an evidentiary hearing is held, however, the specter of racial prejudice hangs over the trial and undermines public confidence in the verdict. See Developments in the Law — Race and the Criminal Process: VII. Racist Juror Misconduct During Deliberations, 101 Harvard L.Rev. 1595, 1600 (1988) (“Permitting defendants to expose racially tainted deliberations gives the public' — particularly minority citizens — more reason, not less, to trust the final results of the criminal justice system.”).
I.
We refuse to be a society in which a defendant’s guilt or innocence is decided by the color of her skin. Accordingly, the Sixth Amendment entitles every defendant to an impartial, unbiased jury. See Henley, 238 F.3d at 1120. We have held that the Sixth Amendment is violated by “the bias or prejudice of even a single juror.” Id. (quoting Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir.1998)). The danger caused by such bias or prejudice, and the need to take extra measures to protect against it, has been repeatedly recognized. See, e.g., Turner v. Murray, 476 U.S. 28, 35-36, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
To be consistent “with the broad goal of eliminating racial prejudice from the judicial system,” evidence of racial bias within jury deliberations should be admissible. Henley, 238 F.3d at 1120. The majority, however, would use Rule 606(b) to prohibit the introduction of some evidence of racial prejudice. This is inconsistent with the Supreme Court’s holding that, despite Rule 606(b), “[a] juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide.... ” Id. (quoting Rushen v. Spain, 464 U.S. 114, 121 n. 5, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)). In Henley we correctly reasoned that Rule 606(b)’s general bar on inquiry into the deliberations of the jury does not apply to testimony relating to racial prejudice because “[rjacial prejudice is plainly a mental bias that is unrelated to any specific issue that a juror in a criminal case may legitimately be called upon to determine.” Henley, 238 F.3d at 1120.[1]
The majority attempts to distinguish the present case from Henley by arguing that “to the extent that [White’s] declaration alluded to racial matters, it did not reflect evidence of racial bias against the defendants and related purely to the dismissed juror’s position on the merits of the defendants’ guilt or innocence.” Maj. op. at 1019. The majority apparently would allow racial prejudice within the jury as long as there is no explicit evidence that the bias was directed at the defendants. Such a position is untenable, and violates the basic premise that racial bias should never play a role in the decision-making process of a jury. If the prejudice of other members of the jury forced Juror No. 8., who was inclined to vote for acquittal, off the case, then that prejudice is no less troubling than racial bias aimed directly at the *1024 defendants because such prejudice effectively decided the outcome of the case. Furthermore, if the racial prejudice present in the jury room was strong enough to pressure a fellow juror to seek dismissal, it is very likely such bias also invaded the remaining jurors’ deliberations regarding the African-American defendants.
Henley dictates the result in this case. We should hold that Rule 606(b) does not bar the admission of juror testimony and other evidence regarding racial prejudice within the jury.
II.
Based on White’s declaration and the circumstances of Juror No. 8’s dismissal, the Appellants are entitled to an evidentia-ry hearing regarding the existence and extent of racial bias within their jury.
In determining whether to hold a healing, a district court “must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source.” United States v. Saya, 247 F.3d 929, 935 (9th Cir.2001). Holding an evidentiary hearing is “usually preferable,” unless “the court [knows] the exact scope and nature of the ... extraneous information.” Id. (internal quotation marks and citation omitted).
Here, the seriousness of the alleged misconduct, racial prejudice within the jury, weighs heavily in favor of holding an evi-dentiary hearing. Nonetheless, the majority would dismiss such grave allegations as vague and speculative based on flawed comparisons with cases that differ significantly from this case in their procedural postures.
First, the content of White’s declaration is no more vague or speculative than statements that have justified other evidentiary investigations. For instance, a judge stopped a trial and questioned the jury after a bare allegation that “ethnic slurs” had been made in the jury room. See United States v. Heller, 785 F.2d 1524, 1525 (11th Cir.1986).
The majority compares White’s statement [2] against several statements of racial bias discussed in other cases within this Circuit, and finds it lacking in some unquantified degree of specificity. See maj. op. at 1018-20. In most of the cases cited by the majority, however, an evidentiary hearing had already been held, which produced more specific and detailed statements of racial prejudice. See Henley, 238 F.3d at 1113 (“the district court conducted evidentiary hearings on the motions for a new trial”); Heller, 785 F.2d at 1525 (noting specific statements of racial bias were only revealed after the judge stopped deliberations and questioned the jury). And in Fields v. Woodford, the case on which the majority most heavily relies, it is not clear whether the appellant was seeking a new trial, or an evidentiary hearing, based on the scant evidence of racial bias. 315 F.3d 1062, 1063 (9th Cir.2002) (as amended). This distinction in remedy sought is relevant since, as the cases cited by the majority demonstrate, far less specific evidence is needed to justify an evidentiary hearing than is required for the grant of a new trial. Here, the Appellants are not seeking a new trial, but merely an eviden-tiary hearing to explore in more detail the content of Juror No. 8’s implied allegations of racial bias. The very purpose of that hearing would be to elicit the more specific statements of prejudice the majority is searching for.
*1025 Second, the strength of the allegations in White’s declaration must be viewed in the context of the entire trial. According to the statement, Juror No. 8 implied that racial prejudice may have been behind her decision to seek dismissal from the jury. Such an inference is circumstantially corroborated by the actual dismissal of Juror No. 8, the only African-American juror. At the time of her dismissal, Juror No. 8 claimed she could not judge another person due to her religious beliefs. During voir dire, however, she testified her beliefs would not interfere with her ability to deliberate. Furthermore, up until her request for dismissal, Juror No. 8 had been actively deliberating with the other jurors, as evidenced by two signed questions and requests for additional information that she submitted to the District Court.
Despite the fact that Juror No. 8 initially denied that the other jurors influenced her decision to request dismissal, that denial was called into question by her later statements to White and the circumstances of her dismissal. Only an evidentiary hearing can reconcile Juror No. 8’s contradictory assertions. See United States v. Jackson, 209 F.3d 1103, 1109 (9th Cir.2000) (“The discrepancy between the juror’s statements during the voir dire and his later statement to the investigator calls for a resolution that can be reached only through an evidentiary hearing.”).
Accordingly, I find the District Court abused its discretion by denying Appellants’ request for an evidentiary hearing and would remand for a hearing on Appellants’ allegations of racial prejudice within the jury.

. The majority also calls into question White's credibility. Maj. op. at 1020. The District Court, however, never explicitly found White not to be credible. Nor should we assume White's statements about her interaction with Juror No. 8 to be untrue.